## PEOPLE *v.* DOGANS

1. SEARCHES AND SEIZURES—EVIDENCE—HEROIN—APPEAL AND ERROR.

   The Court of Appeals is obliged to consider a search and seizure
   issue, even if not properly preserved at the trial level, where
   the only evidence offered at trial to support a charge that
   defendant possessed heroin was testimony concerning a packet
   of heroin found on his person when he was arrested.

2. SEARCHES AND SEIZURES—STANDING TO COMPLAIN.

   Declaration that defendant did not have standing to complain
   of the search and seizure of his person because it occurred
   on premises which he did not own is manifestly an erroneous
   statement of the law.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  47 Am Jur, Searches and Seizures § 54.
  Modern status of rule governing admissibility of evidence ob-
    tained by unlawful search and seizure.  50 ALR2d 531.
[2]  47 Am Jur, Searches and Seizures § 72.
[2, 3]  Nature of interest in, or connection with, premises searched
    as affecting standing to attack legality of search.  78 ALR2d
    246.
[3]  29 Am Jur 2d, Evidence §§ 425–427.
[4]  5 Am Jur 2d, Arrest §§ 22–51.
[4–7]  Police officer's power to enter private house or inclosure to
    make arrest, without a warrant, for a suspected misdemeanor.
    76 ALR2d 1432.
[5]  5 Am Jur 2d, Arrest §§ 7–17.
[6]  5 Am Jur 2d, Arrest §§ 22–51.
[7]  5 Am Jur 2d, Arrest §§ 24, 32.
[8]  5 Am Jur 2d, Arrest §§ 86–93.
  Validity, construction, and application of statutes authorizing
    public officer to break into building to serve documents or process
    or to execute process in civil proceeding.  129 ALR 247.
[9]  5 Am Jur 2d, Arrest § 45
  Flight as evidence of guilt.  25 ALR 886.

3. SEARCHES AND SEIZURES—PROBABLE CAUSE—STANDING TO COM-
PLAIN.

Defendant had the right to have suppressed any heroin taken
from his person without probable cause, regardless of whether
he had standing to complain of a search of his friend's
apartment or of other apartments.

4. ARREST — PROBABLE CAUSE — WITHOUT WARRANT — REASONABLY
TRUSTWORTHY KNOWLEDGE.

There is probable cause to arrest without a warrant if the facts
and circumstances known to the arresting officer and of which
he has reasonably trustworthy knowledge warrant a prudent
man in believing that the accused person has committed or was
committing an offense.

5. ARREST—WARRANT.

The reliability and particularity requirements applicable where
a search warrant is sought also govern the issuance of arrest
warrants.

6. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

Since an arrest without a warrant bypasses an objective pre-
determination of probable cause by an independent magistrate,
the requirements of reliability and particularly of the informa-
tion on which an officer may act are at least as stringent
where a defendant is arrested without a warrant as where an
arrest warrant is obtained.

7. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

Probable cause for an arrest without warrant was not estab-
lished, although the victim told the police his brother-in-law
and two others had stolen a stereo and removed it to the apart-
ment where the defendant was later arrested, and *after* the
police left the victim discovered a wood chisel that incriminat-
ed his brother-in-law, where there was nothing that would sup-
port a finding that the victim related any of the underlying
circumstances that led him to the conclusion or what they
were.

8. ARREST—BREAKING DOOR.

A police officer may, when making an authorized felony arrest,
break open an inner or outer door of any building in which
the person to be arrested is or is reasonably believed to be
if, after he has announced his purpose, he is refused admis-
sion (MCLA § 764.21).

9. ARREST—FLIGHT—CONSCIOUSNESS OF WRONGDOING.

    Flight may be some evidence of consciousness of wrongdoing, but it does not necessarily point to the commission of a felony, and a police officer may not arrest for consciousness of wrongdoing; he must have reasonable cause to believe that a felony has been committed and that the accused person committed it (MCLA § 764.15).

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 June 2, 1970, at Detroit. (Docket No. 1,287.) Decided September 28, 1970.

Ernest Dogans was convicted of possession of heroin. Defendant appeals. Remanded for a complete evidentiary hearing on admissibility of seized evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*James A. Sullivan,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and LEVIN and BORRADAILE,* JJ.

LEVIN, J. The defendant, Ernest Dogans, appeals his conviction of possession of 43.25 grains of heroin.[1] A tinfoil packet of heroin was found in his pocket during a search following his arrest in connection with an investigation of the theft of a stereo

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123).

phonograph.[2] No formal motion to suppress the seized narcotics was filed,[3] but the issue was considered both during the preliminary examination and the trial.[4]

In *People* v. *DeGraffenreid* (1969), 19 Mich App 702, we recently discussed the responsibility of an appellate court to consider a search and seizure issue not properly preserved at the trial level. We held that although the Fourth Amendment right to have illegally-seized evidence suppressed is a constitutional right, it may be waived by the failure of a defendant's lawyer to preserve and assert it. We added, however, that if the defendant's conviction could properly be attributed to the failure to assert that right we may, and in some cases are obliged to, consider the issue so that an accused person is not convicted as a result of serious lawyer error (p 716):

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial".

We affirmed DeGraffenreid's conviction because after considering the other evidence against him we concluded that even if the seized evidence were suppressed he would assuredly be convicted upon a new trial. Since his conviction was not attributable to his lawyer's mistake and the issue was not properly preserved for appeal, we saw no need to order a new trial.

---

[2] Three officers testified that they were directed to the Iroquois address to meet a man (Harry Bolling) who would point out persons suspected of breaking and entering.

[3] See *People* v. *Ferguson* (1965), 376 Mich 90, 95.

[4] Since the issue appears to have been disposed of on the merits, both by the examining magistrate and by the trial judge (see, *infra*), on that ground also we should review their decisions on the merits. *Cf. People* v. *Wiejecha* (1968), 14 Mich App 486.

In this case we cannot so readily dispose of the search and seizure issue.[5] The only evidence offered at the trial to support the charge that Dogans possessed 43.25 grains of heroin was the testimony concerning the packet of heroin found on his person when he was arrested. It is, therefore, perfectly clear that the seized evidence contributed to his conviction. In such a case we are obliged to consider the issue even if not properly preserved at the trial level.[6]

Although no formal motion seeking the suppression of the seized heroin was filed, as previously indicated both at the preliminary examination and at the trial witnesses testified concerning the circumstances preceding and at the time of Dogans' arrest.

Harry Bolling testified that when he returned home from work his wife informed him that at about 6 p.m. she had discovered that their 8-foot stereo phonograph was missing. He concluded that Patrick Pattilo, his brother-in-law, and Bedford Dillard and Nathaniel McLaughlin had taken it and called the police. When the police arrived at 10 p.m. Bolling told them of his conclusions and that he thought they had removed the stolen stereo to a two-story apartment building at 5171 Iroquois, Detroit, Michigan,

[5] After Dogans was arrested the police found other narcotics in the apartment building where he was arrested but at the trial no effort was made to show that the other narcotics were heroin or to tie in Dogans with those narcotics. A number of other persons in the building were also arrested.

[6] See *People* v. *Ibarra* (1963), 60 Cal 2d 460 (34 Cal Rptr 863, 386 P2d 487); *People* v. *Johnson* (1967), 38 Ill 2d 399 (231 NE2d 447), where the seized evidence was the only evidence supporting the conviction and suppression of the evidence was not sought at the trial level. See, also, *Kaufman* v. *United States* (1969), 394 US 217 (89 S Ct 1068, 22 L Ed 2d 227), and *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419), where the United States Supreme Court considered post-conviction claims based on the admission of seized evidence although not properly preserved at the trial level.

"to get junked." The police left immediately for that address with Bolling in their cruiser.

When they arrived, Bolling pointed out his brother-in-law who was a short distance from the apartment building. Nathan Beasley was then leaving the building. The police arrested Beasley. The record does not show why Beasley, who was not one of the culprits named by Bolling, was arrested.

One of the officers testified that the defendant Dogans was at a doorway of the building and had observed the arrival of the police and the arrest of Beasley, and that Dogans then closed the door and ran up the stairs. The officer said he kicked in the door and pursued Dogans to the top of the stairs where Dogans was arrested for breaking and entering a dwelling. He also said that before arresting Dogans he asked him whether he lived in the building and Dogans replied that he did not, and that he observed Dogans throw something away. When asked what it was that Dogans threw away, the officer responded that it was a nail clipper.[7]

After Dogans was arrested the police conducted a general search of the building, found more narcotics,[8] and arrested all the occupants, some nine persons. The stereo was not found.

At the conclusion of the preliminary examination the magistrate ruled that the arrest was valid largely because of the testimony regarding the defendant's flight up the stairs when he saw the officers. He also ruled that the search and seizure of the heroin were valid as an incident of the arrest and the heroin was, therefore, admissible in evidence.

Dogans did not testify at the examination, but he did testify at the trial. He said that he was not

---

[7] It is somewhat incomprehensible that the defendant would in the presence of the police have thrown away a nail clipper. It has not been suggested what he might thereby have sought to accomplish.

[8] See fn. 5.

downstairs at a door, did not observe the arrival of the police, and that they broke down the door of the apartment of a lady friend whom he was visiting and arrested him. He also denied that he had any narcotics in his possession.

The case was tried before a judge sitting without a jury. It does not appear from the record to what extent the trial was directed to the search and seizure issue.[9] The judge was, however, aware, or made aware off the record of the importance of the question. After the conclusion of the trial and after hearing argument of counsel he declared that the defendant did not have standing to complain of the search and seizure of his person because it occurred on premises which he did not own. That is manifestly an erroneous statement of the law. Whether the defendant had standing to complain of a search of his friend's apartment or of other apartments in the building, he most assuredly had the right to have suppressed any heroin taken from his person without probable cause.[10]

The judge did not resolve the factual dispute of whether the defendant was arrested at the top of the stairs after first having fled from the police or in his friend's apartment. And, even if it were to be decided that he did flee and he was arrested in the hallway, there would still remain a substantial ques-

---

[9] We recognize that in appraising the validity of the trial court's ruling we are limited to the evidence introduced at the suppression hearing. *People* v. *Kaigler* (1962), 368 Mich 281, 288. We have discussed both records because there were two separate rulings on admissibility, one by the examining magistrate, the other by the trial judge.

Further, we do not reverse these rulings. Rather we hold merely that the record so far made does not support them and that the importance of the search and seizure question in this case requires a further hearing clearly focused on the issue of probable cause to arrest.

[10] *People* v. *Sims* (1970), 23 Mich App 194.

tion as to whether there was probable cause to arrest him.

There is probable cause to arrest without a warrant if the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy knowledge warrant a prudent man in believing that the accused person has committed or was committing an offense.[11] The reliability and particularity requirements applicable where a search warrant is sought[12] also govern the issuance of arrest warrants.[13] And since an arrest without a warrant bypasses an objective predetermination of probable cause by an independent magistrate, "the requirements of reliability and particularity of the information on which an officer may act" are at least as stringent where a defendant is arrested without a warrant as where an arrest warrant is obtained.[14]

We have recently reviewed these requirements in *People* v. *Zoder* (1968), 15 Mich App 118, 121. We observed that in *Aguilar* v. *Texas* (1964), 378 US 108, 113, 114 (84 S Ct 1509, 12 L Ed 2d 723), the United States Supreme Court held deficient an affidavit upon which a search warrant had issued because it stated a (p 113) "mere conclusion" and did not inform the magistrate (p 114) "of the underlying circumstances from which the informant concluded

---

[11] *Beck* v. *Ohio* (1964), 379 US 89, 91 (85 S Ct 223, 13 L Ed 2d 142); *Henry* v. *United States* (1959), 361 US 98, 101, 102 (80 S Ct 168, 4 L Ed 2d 134); "common rumor or report, suspicion, or even 'strong reason to suspect' [is] not adequate to support a warrant for arrest".

[12] See *Aguilar* v. *Texas*, discussed *infra*.

[13] *Giordenello* v. *United States* (1958), 357 US 480, 485, 486 (78 S Ct 1245, 2 L Ed 2d 1503); *Wong Sun* v. *United States* (1963), 371 US 471, 480 (83 S Ct 407, 9 L Ed 2d 441); *Chimel* v. *California* (1969), 395 US 752, 754 (89 S Ct 2034, 23 L Ed 2d 685); *cf. Henry* v. *United States*, *supra*, p 101.

[14] *Wong Sun* v. *United States*, *supra*, pp 479, 480; *Beck* v. *Ohio*, *supra*, p 96; *Spinelli* v. *United States* (1969), 393 US 410, 417, n 5 (89 S Ct 584, 21 L Ed 2d 637).

that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation omitted] was 'credible' or his information 'reliable' ". *Aguilar's* requirement that the "underlying circumstances" be adequately stated was recently reaffirmed in *Spinelli* v. *United States* (1968), 393 US 410 (89 S Ct 584, 21 L Ed 2d 637). These requirements have been consistently applied by the United States Supreme Court in warrantless arrest cases.[15]

That Court has also held that the people have the burden of establishing that a warrantless arrest is supported by probable cause.[16] In this case the record shows no more than that Bolling told the officers that his brother-in-law and two other men had stolen his stereo and removed it to the apartment building where the defendant was later arrested. There is nothing that would support a finding that Bolling related any of the underlying circumstances that led him to that conclusion or what they were. When asked at the trial why he thought his brother-in-law stole the stereo, he said that *after* the police left he discovered a wood chisel belonging to his wife's grandfather and that this incriminated his brother-in-law. Since this discovery occurred after the defendant's arrest and, therefore, could not have been related to the police before the arrest, they could not have acted on that information.[17]

---

[15] *McCray* v. *Illinois* (1967), 386 US 300, 304 (87 S Ct 1056, 18 L Ed 2d 62), *reh. den.* 386 US 1042 (87 S Ct 1474, 18 L Ed 2d 616); *Beck* v. *Ohio, supra,* p 96; *Wong Sun* v. *United States, supra,* pp 479–481; *Recznik* v. *City of Lorain* (1968), 393 US 166, 169, 170 (89 S Ct 342, 21 L Ed 2d 317).

[16] *Recznik* v. *City of Lorain, supra,* p 169; *Beck* v. *Ohio, supra,* p 97.

[17] See *Dyke* v. *Taylor Implement Mfg. Co., Inc.* (1968), 391 US 216, 221, 222 (88 S Ct 1472, 20 L Ed 2d 538).

When making an authorized felony arrest a police officer may, indeed, break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance.[18]     But, for reasons already stated, it has not yet been shown that the police had probable cause to arrest anyone, including the brother-in-law and the two other men, let alone the defendant Dogans.

Pertinent is the recent decision of the United States Supreme Court in *Recznik* v. *City of Lorain* (1968), 393 US 166 (89 S Ct 342, 21 L Ed 2d 317). The police had been informed that a crime, gambling, was being committed at the defendant's premises.     When the police arrived in the wee hours of the morning they noticed an unusually large number of cars parked in the vicinity.     They entered through the back doorway unannounced and, as they headed for the front of an upstairs apartment, where the arrests occurred, the defendant emerged from a room and told the officers they could not enter. Through the door opened by the defendant, one of the officers saw a dice game in progress.     They entered and placed everyone under arrest and seized evidence of the offense.     In holding the arrest and incidental search invalid, the United States Supreme Court emphasized that the police (p 169) "did not relate what information they received" from their unidentified informers other than that there were "all sorts of gaming devices *downstairs*".     (Emphasis by the Court.)

In the present case the informer Bolling was identified, thus possibly satisfying the reliability re-

---

[18] As to whether the manner of entry in this case was within the authority of the police, see *Sabbath* v. *United States* (1968), 391 US 585 (88 S Ct 1755, 20 L Ed 2d 828), construing a statute similar to Michigan's.   MCLA § 764.21 (Stat Ann 1954 Rev § 28.880).

quirement.[19]   But, we repeat, the record does not show that Bolling communicated to the officers underlying facts and circumstances which would warrant a prudent man in believing that persons on the apartment premises had committed or were committing an offense in connection with the theft of the stereo.[20]   The right of the police to enter the apartment building without permission was not established.[21]

Even if Dogans ran from the police and threw away a nail clipper—and whether he did or not has not been resolved by a finding of fact—that would not have provided probable cause to have arrested him for theft of Bolling's stereo.   Flight may be some evidence of consciousness of wrongdoing, but it does not necessarily point to the commission of a felony.[22]   A police officer may not arrest for consciousness of wrongdoing.[23]   He must have reasonable cause to believe that a felony has been committed and that the accused person committed it.[24]

The reason why flight alone does not justify an arrest and the police must relate the flight to the commission of a crime is because, as is borne out by the facts of this case, there is no necessary rela-

[19] See *People* v. *Hogan* (1969), 71 AC 927 (80 Cal Rptr 28, 457 P2d 868); contrast *Holbrook* v. *United States* (CA10, 1969), 406 F2d 44; and *People* v. *Abbott* (1970), 3 Cal App 3d 966 (84 Cal Rptr 40), concerning "citizen" and victim informers.

[20] *Cf. Dyke* v. *Taylor Implement Mfg. Co., Inc., supra,* and *Chambers* v. *Maroney, supra,* where the United States Supreme Court ruled that an officer conducting a warrantless search must have reasonable or probable cause to believe that he will find the instrumentality of a crime or evidence pertaining to a crime before he begins his search.

[21] See *Gouled* v. *United States* (1921), 255 US 298, 305 (41 S Ct 261, 65 L Ed 647); *Ker* v. *California* (1963), 374 US 23, 53 (83 S Ct 1623, 10 L Ed 2d 726) (per Brennan, J., three other justices concurring).

[22] *Cf. People* v. *Cismadija* (1911), 167 Mich 210, 215.

[23] See *People* v. *Reeves* (1970), 23 Mich App 183, 186; *People* v. *Stein* (1933), 265 Mich 610, 614.

[24] MCLA § 764.15 (Stat Ann 1954 Rev § 28.874).

tionship between flight (consciousness of wrongdoing) and the crime being investigated. It is now apparent that if the defendant fled he did not do so because he feared implication in the crime the police were investigating but rather because he was carrying narcotics, a completely unrelated crime of which the officers do not claim they had foreknowledge.

Under the United States Supreme Court's decision in *Terry* v. *Ohio* (1967), 392 US 1 (88 S Ct 1868, 20 L Ed 2d 889), if the police had the right to enter the apartment building and had detained, not arrested, Dogans for a short time while they brought Bolling into his presence[25] and in the meantime had patted Dogans down for offensive weapons, and had discovered evidence of the commission of another crime, such evidence might have been admissible. But here the officer did more than make a limited patting down of Dogans' outer clothing for weapons. He made a full exploratory search well beyond the scope of the frisk held in *Terry* not to be violative of a suspect's Fourth Amendment rights.[26]

---

[25] Dogans was one of many persons in the building. The police might have asked Dogans his name before arresting him and, if dissatisfied with the answer, have asked Bolling, who arrived at the building in the police cruiser, whether Dogans was one of the three men he suspected.

[26] In *Terry* and in *Sibron* v. *New York* (1968), 392 US 40 (88 S Ct 1889, 20 L Ed 2d 917), the United States Supreme Court ruled that evidence discovered in a limited search is admissible under the Fourth Amendment even though there is not probable cause to arrest if the officers are able to point "to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an intrusion upon the defendant's privacy (*Terry*, p 21). The Court declared that "in appropriate circumstances and in an appropriate manner [a police officer may] approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest". (*Terry*, p 22). And, where the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime" (*Terry*, p 27) he may "conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him". (*Terry*, pp 30, 31).

The precipitous, unexplained arrest of Beasley and the immediately following arrest of the defendant Dogans gives some reason to believe that upon arriving at the apartment building the police simply arrested everyone in sight without regard to whether there was probable cause to believe that they had any connection with the crime being investigated.[27]

While we are obliged to make our own independent evaluation of the record in determining the constitutional issue of whether the heroin was permissibly seized as an incident to a valid arrest,[28] we do not think that a final determination of the factual issues relating to the defendant's arrest and the search and seizure should be made on the inadequate record presented. The inadequacy of the record may be attributable to the defendant's failure to file a formal motion to suppress the seized heroin. At a further hearing the people might be able to supplement the evidence introduced. Under the circumstances we think that the people should be given another opportunity to meet their burden of establishing that there was probable cause for the defendant's warrantless arrest.

Remanded for a complete evidentiary hearing on the admissibility of the seized evidence and further proceedings consistent with this opinion.

All concurred.

---

The limited search conducted in *Terry* was approved, but in *Sibron* it was held that the officer had not pointed "to particular facts from which he reasonably inferred that the individual was armed and dangerous" (*Sibron,* p 64) and, further, the *Sibron* search "was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by discovering a potentially dangerous man". (*Sibron,* p 65.)

[27] See *People* v. *Stein, supra,* p 614.

[28] See *Beck* v. *Ohio* (1964), 379 US 89, 92 (85 S Ct 223, 13 L Ed 2d 142); *People* v. *Smith* (1969), 19 Mich App 359, 367, 368.