THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DENNIS PAUL KARPEL, Appellant.—Appeal from a judgment of the County Court of Broome County, rendered April 26, 1978, convicting defendant on his plea of guilty of the crime of burglary in the third degree. The operator of Frankie's Bar, located at 1 Brocton Street in Johnson City, New York, discovered at 4:30 A.M. on January 30, 1978, that the bar had just been burglarized. The cigarette machine had been entered into, and pennies and other coins were taken. Upon their arrival at 4:45 A.M., the police discovered two sets of footprints in the snow—it had been lightly snowing that night. The officers followed the footprints from Frankie's Bar to another bar, Red's Kettle Inn, where they interrupted a second burglary. Patrolman Glanville testified that, as he approached Red's Kettle Inn, he observed defendant's companion, one Lawrence Noble, approximately 20 years old, near an open window and Patrolman Close, ascertaining that Noble's footprints were the same as the ones he had been following, placed him under arrest. A search of Noble's pockets uncovered rolled coins. After searching the interior of Red's Kettle Inn and ascertaining that a cigarette machine had also been broken into there, the police followed another set of footprints in the snow, identical to the second set leading from Frankie's Bar to Red's Kettle Inn, to defendant's apartment located at 342 Main Street, Binghamton, New York.

They entered the building, found snow and some water on the steps, and, at the first landing, observed a small portion of water approximately 12 inches from the door of apartment No. 1—later determined to be defendant's apartment. The police checked for further signs of snow as far as the third floor, where an older man who lived there told them that the only young people who lived in the building resided in apartment No. 1 on the first floor. The officers then knocked on the door of apartment No. 1, announced their identity, but there was no response. They again knocked on the door, this time "pretty good", and Patrolman Glanville testified that the door, which was slightly open and in a dilapidated condition, started to swing open by itself, whereupon they observed numerous coins strewn about the interior of the apartment. The police then entered the apartment, ascertained that no one was there, and left without taking anything. Shortly thereafter, defendant was arrested when he was found hiding in a storage area in the rear of the apartment building. Before removing defendant to police headquarters, the police again entered his apartment to secure it and left without searching it or seizing any property. At police headquarters, defendant waived his *Miranda* rights, and confessed in writing to the two burglaries. He admitted that he had entered his apartment, secreted some of the burglary proceeds under the refrigerator, and that in his haste to get out of the apartment before the police arrived, dropped some of the coins about the apartment. He also consented in writing to a search of his apartment. Defendant's motion to suppress the evidence obtained against him was denied after a hearing. Thereafter, defendant entered a plea of guilty to burglary in the third degree and, adjudged a second felony offender, he was sentenced to an indeterminate term of imprisonment of not more than four years and not less than two. Defendant contends, first, that the initial entry by the police into his apartment was an illegal search and intrusion. We find on this record that the police had probable cause to enter defendant's apartment and that, therefore, the initial entry was lawful (CPL 140.15, subd 4). The police had followed the two sets of footprints from Frankie's Bar to Red's Kettle Inn, and then to the apartment building where defendant resided. It was snowing lightly that morning but the tracks had not yet been obliterated. Moreover, because of the early morning hours, there were virtually no other footprints which could confuse the police. When they reached the apartment building, they followed the snow up the stairs to the first landing where, some 12 inches from the door to defendant's apartment, they discovered snow and some water. Finally, they were informed by a tenant that the only young tenant (who they suspected as being the second perpetrator because his companion, Noble, was also young) lived in apartment No. 1, where they had just seen the water. At that point in time, there was sufficient probable cause to believe that the perpetrator of the burglaries was inside the apartment, and reasonably believing that they were in close pursuit (see *Warden v Hayden,* 387 US 294, 298-299), they had a right to enter and arrest the suspect (CPL 140.15, subd 4). Furthermore, there was undisputed testimony that prior to their entry, the police knocked on the door, announced their identity, and that, since the door was in a dilapidated condition, it swung open by itself. From their vantage point outside the door in the hallway, they thus observed coins strewn about defendant's apartment. We hold, therefore, that the entry without a warrant to search for the burglar was not invalid for, under the circumstances of this case, "the exigencies of the situation made that course imperative" *(McDonald v United States,* 335 US 451, 456). In view of our holding, we reject defendant's second contention that his oral and written

admissions to the police were predicated upon the initial illegal entry by the police. Judgment affirmed. Mahoney, P. J., Greenblott, Sweeney, Kane and Mikoll, JJ., concur.