PEOPLE v STRELOW

Docket No. 78-3704. Submitted January 17, 1980, at Detroit.—Decided March 17, 1980.

Albert J. Strelow was convicted in St. Clair Circuit Court, Halford I. Streeter, J., of resisting and obstructing an officer in the discharge of his duties. This charge arose out of a struggle between defendant and a police officer who had entered defendant's residence to effectuate the arrest for a traffic offense. The officer had observed defendant's automobile traveling in excess of the speed limit; however, the officer, instead of stopping defendant immediately, followed defendant to his residence, using neither flashing lights nor siren. As defendant exited from his automobile, the officer shouted "hey", whereupon defendant ran into his residence with the officer close behind. The officer entered the residence without announcing his purpose or requesting admission to the premises. When defendant refused to produce his driver's license, a protracted scuffle ensued. Defendant appeals claiming that his arrest was invalid by reason of the officer's warrantless and unannounced entry into a defendant's private residence. *Held:*

1. The officer could properly arrest defendant for the traffic offense even though some period of time had passed between the time of the offense and the time the officer eventually attempted to effectuate the arrest. The arrest was not so temporally remote from the traffic violation as to require the securing of a warrant.

2. A police officer may make a warrantless entry into a private residence in order to make an arrest for a misdemeanor

References for Points in Headnotes

[1] 5 Am Jur 2d, Arrest §§ 33, 43.
Peace officer's delay in making arrest without a warrant for misdemeanor or breach of peace. 58 ALR2d 1056.
[2,3] 5 Am Jur 2d, Arrest §§ 69, 70, 93.
Police officer's power to enter private house or inclosure to make arrest, without a warrant, for a suspected misdemeanor. 76 ALR2d 1432.
[4] 5 Am Jur 2d, Arrest §§ 33, 43, 69, 70, 93.

committed in the officer's presence. Such entry, however, must be preceded by the officer's announcement of his purpose and must come only after the officer has been denied admittance to the residence. The requirements of the Michigan entry statute, which is couched in terms of a felony arrest, are equally applicable to entries made to effectuate arrests for misdemeanors.

3. The officer's shouting of the single word "hey" was not sufficient under these circumstances to apprise the defendant of the officer's purpose of making an arrest for the prior traffic offense which was both temporally and geographically removed from the arrest location. Not only did the shouting of this word not satisfy the announcement requirement necessary to make an entry of a private residence, but, further, the shouting of that single word was not sufficient to amount to substantial compliance with the entry requirements or to act as the basis of a hot pursuit of the defendant into his residence without making the necessary announcement of purpose.

4. Since there was no compelling reason for the officer to believe that the delay occasioned by satisfying the announcement of purpose requirement and by awaiting a denial of admittance before proceeding with the entry would permit defendant to escape from justice, would endanger the safety of the officer or the public, or would lead to the destruction or hiding of material evidence, there were no exigent circumstances which would justify the officer's unannounced entry into defendant's residence.

5. Since the officer's attempted arrest of defendant within his residence for the traffic offense was unlawful by reason of the officer's improper unannounced entry into defendant's home, defendant's subsequent arrest for resisting and obstructing an officer in the discharge of his duties was improper. The conviction for resisting and obstructing an officer, accordingly, must be reversed.

Reversed.

1. ARREST — WARRANTLESS ARREST — MISDEMEANOR — TIME BETWEEN OFFENSE AND ARREST.

An arrest for a traffic violation is sufficiently immediate to the commission of that violation to justify arrest without a warrant where a police officer observes a defendant speeding and then follows the defendant to his residence before attempting to effectuate the arrest.

2. Arrest — Warrantless Arrest — Misdemeanor — Entry into Private Home — Failure to Announce Purpose — Statutes.

A police officer may make a warrantless entry into a private residence in order to effectuate an arrest for a misdemeanor committed in the officer's presence; however, such entry must be preceded by the officer's announcement of his purpose and by a denial of admittance, since the requirements of the Michigan felony arrest entry statute are equally applicable to an entry made to effectuate an arrest for a misdemeanor (MCL 764.21; MSA 28.880).

3. Arrest — Warrantless Arrest — Misdemeanor — Entry into Private Residence — Failure to Announce Purpose — Substantial Compliance — Hot Pursuit.

The shouting of the word "hey" by a police officer who followed a defendant's automobile, without the use of flasher lights or siren, to the defendant's residence for the purpose of effectuating an arrest of the defendant for a traffic violation is not sufficient to place the defendant on notice of the officer's purpose such that, when the defendant enters his residence, the officer is justified on the basis of substantial compliance or on the basis of hot pursuit to enter defendant's residence without first announcing his purpose.

4. Arrest — Warrantless Arrest — Misdemeanor — Unannounced Entry — Exigent Circumstances.

An unannounced entry into a defendant's residence by a police officer seeking to effectuate an arrest for a traffic violation committed in the officer's presence is not justified on the basis of exigent circumstances where there is no compelling reason to believe that the delay occasioned by the officer announcing his purpose would permit defendant to escape justice, would endanger the life or safety of the officer or the public, or would lead to the destruction or hiding of material evidence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Van De Graaf & Van De Graaf,* for defendant.

Before: M. J. Kelly, P.J., and Bronson and D. C. Riley, JJ.

M. J. KELLY, P.J. Defendant was found guilty by a jury of resisting and obstructing an officer in the discharge of his duties contrary to MCL 750.479; MSA 28.747 and ordered to pay a fine of $100, court costs of $150 and restitution of $135. Defendant appeals of right.

According to the testimony presented by the prosecution the charge against defendant arose out of the following series of events which occurred on the evening of June 23, 1977. While driving south on Dyke Road at approximately 8:30 p.m., Gary Brusate, a Clay Township police officer, clocked defendant's vehicle at 62 miles per hour in a 50 miles per hour zone. Brusate waited for traffic to clear, made a U-turn, and proceeded to follow defendant. Before the officer was able to execute his turn, a third vehicle intervened traveling in the same direction as defendant at a slower rate of speed. By the time Officer Brusate was able to close the distance between them, defendant was no longer speeding. Due to the presence of the other vehicle positioned between the defendant and himself, Brusate did not activate his siren or flashing lights. The three-car procession turned left on Anchor Bay Drive. The middle car subsequently turned off in another direction and Officer Brusate followed defendant down a dead-end street and into defendant's driveway. At this time defendant was traveling at approximately 25 miles per hour. As defendant was exiting from his vehicle the officer beeped his horn and, alighting from the marked police car, shouted "Hey" to defendant Strelow. Mr. Strelow, who saw the officer and heard his call, ran into the house with Brusate close behind. Without stating his purpose or requesting admission, the policeman followed defendant into the residence. When defendant refused to produce his driver's license the officer placed

him under arrest. A protracted scuffle ensued and defendant was finally subdued upon the arrival of additional officers who had been called to the scene.

Defense witnesses, including Strelow's brother-in-law who was in the house when the defendant returned home and two neighbors, presented a different version of the events that occurred that evening. All were in agreement that defendant arrived home 1-1/2 to 3 minutes before the police car appeared on the scene. Defendant's own testimony, and that of his brother-in-law, differed from the complainant's testimony as to the sequence of events and nature of the struggle that took place once Brusate was inside the home.

The critical issue raised on appeal is the legality of the arrest that was effected subsequent to the officer's warrantless, unannounced entry into defendant's private residence. Defendant's first claim in this regard is focused on the timing of the arrest. The Supreme Court stated in *People v Johnson,* 86 Mich 175; 48 NW 870 (1891), that a warrantless arrest for an offense committed in the officer's presence must be made immediately. However, determination of proper timing is dependent on all the facts and circumstances of a particular case, particularly the purpose for delay and the actual length of time between criminal act and arrest. See 58 ALR2d 1056. In *People v Gray,* 23 Mich App 139; 178 NW2d 172 (1970), the officer followed a reckless driver until he reached his residence. The officer called additional units to his location, and after they arrived the policeman made the arrest. This Court found such facts to constitute sufficient immediacy. In accord with *Gray,* we find the officer's actions were sufficiently immediate upon commission of the traffic violation.

Although we might question the wisdom of Officer Brusate's decision to postpone issuing a traffic citation until he reached defendant's home, we are presented with more serious issues in the context of his use of force in effectuating the misdemeanor arrest and the failure to obtain permission to enter a home.

In its attempt to justify the officer's warrantless, unannounced entry into defendant's household the prosecution relies on MCL 764.15; MSA 28.874 which permits a police officer to make a warrantless arrest when a misdemeanor is committed in his presence. The people claim that this proper exercise of authority encompasses the right of entry into a private residence. Support for this position is found in 76 ALR2d, § 2[b], 1441 which provides:

"Where the circumstances are such that a police officer is justified in believing that a misdemeanor is being committed in his presence, he may enter a private residence or enclosure in order to make an arrest for such offense, even though he has no warrant."

Authority to make a warrantless entry into a private residence does not automatically include, however, the right to enter without proper notice. ALR subsequently states:

"There is some rather scattered authority, sometimes reflecting statutory requirements, in support of the conclusion that, assuming entry into private premises for the purpose of making an arrest for a misdemeanor, without a warrant, is otherwise proper, the officer in question has no authority to enter without first requesting admittance." 76 ALR2d, § 2[c], 1443.

Defendant, in advancing his position that the

arrest was illegal due to the manner of entry, relies on MCL 764.21; MSA 28.880 which provides:

"To make an arrest, a private person, if the offense be felony committed in his presence, or a peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

Although the statute is silent as to arrest for misdemeanors, we believe the same requirements, clearly designed to protect reasonable expectations of privacy, are mandated for lesser offenses. The people respond that demanding formal notice in the instant case would amount to an elevation of form over substance since defendant was aware of Brusate's presence and purpose. This Court has previously recognized the validity of this argument by finding that in some cases, where declaration of purpose would be futile or an unnecessary formality, substantial compliance with the statute is sufficient. *People v Poindexter,* 57 Mich App 419; 225 NW2d 788 (1975), *People v Charles Brown,* 43 Mich App 74; 204 NW2d 41 (1972). However, viewing the evidence in a light most favorable to the state, we do not find that Officer Brusate's conduct triggers application of the substantial compliance doctrine. The defendant testified that he was unaware of the speeding violation. The patrolman followed him for some distance at a reduced speed without ever activating his flasher lights or siren or signalling the defendant to pull over. Police vehicles, absent such demonstrations of authority, are part of the common flow of traffic and we are therefore not persuaded that Mr. Strelow was cognizant of the officer's purpose in following him

to his home and entering the residence. Certainly the officer's beeping his horn and shouting "hey" did not provide such information.

The people further contend that defendant's response to the officer's summons permitted the police to pursue him into his home for the second alleged misdemeanor, resisting an officer in the discharge of his duties. As previously stated, we are not convinced that the defendant was aware of any violation which would give him cause to elude the officer. Flight alone does not justify an arrest, particularly when defendant is not fleeing the scene of a crime. *People v Tebedo,* 81 Mich App 535; 265 .NW2d 406 (1978), *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970).

Several cases hold that substantial compliance is met by an announcement of identity which implies a declaration of purpose. *United States v Alexander,* 346 F2d 561 (CA 6, 1965), *cert den,* 382 US 993; 86 S Ct 575; 15 L Ed 2d 480 (1966), *United States v Sharpe,* 322 F2d 117 (CA 6; 1963), *United States v Freeman,* 144 F Supp 669 (D DC, 1956). At first blush these cases appear to support the entry made in the instant case since defendant was well aware of the patrolman's identity; however, each case is distinguishable on at least one of several grounds: (1) the arrest was for commission of a serious offense, (2) swift action was necessary to prevent the destruction of evidence, or (3) to prevent the flight of the suspect. None of the above circumstances is present in the case at bar. Furthermore, in *Alexander, Sharpe, Freeman* and *Brown,* the officer at least indicated by knocking and identifying himself that he sought admission into the dwelling. Here, Officer Brusate did not give any warning of his intention or desire to enter.

In addition to its substantial compliance argument, the people offer the "hot pursuit" exception to the statutory notice requirements as justification for the complainant's conduct. Whether this exception applies to an unannounced nonconsensual entry into a private residence to effect a misdemeanor arrest has not been previously addressed in this jurisdiction. New York[1] and California[2] have enacted similar legislation clearly appli-

[1] New York Criminal Procedure Law, § 140.15 (McKinney 1971), provides:

"1. A police officer may arrest a person for an offense, pursuant to section 140.10, at any hour of any day or night.

"2. The arresting police officer must inform such person of his authority and purpose and of the reason for such arrest unless he encounters physical resistance, flight or other factors rendering such procedure impractical.

"3. In order to effect such an arrest, such police officer may use such physical force as is justifiable pursuant to section 35.30 of the penal law.

"4. In order to effect such an arrest, a police officer may enter premises in which he reasonably believes such person to be present, under the same circumstances and in the same manner as would be authorized, by the provisions of subdivision four and five of section 120.80, if he were attempting to make such arrest pursuant to a warrant of arrest."

§ 120.80 provides:

"4. In order to effect the arrest, the police officer may, under circumstances and in a manner prescribed in this subdivision, enter any premises in which he reasonably believes the defendant to be present. Before such entry, he must give, or make reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice will:

(a) Result in the defendant escaping or attempting to escape; or

(b) Endanger the life or safety of the officer or another person; or

(c) Result in the destruction, damaging or secretion of material evidence.

"5. If the officer is authorized to enter premises without giving notice of his authority and purpose, or if after giving such notice he is not admitted, he may enter such premises, and by a breaking if necessary."

[2] California Penal Code, § 844 (West 1970), provides:

"To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded

cable to both felony and misdemeanor arrests. Both jurisdictions recognize that hot pursuit of a fleeing felon excuses deviation from the rule. *People v Karpel,* 66 App Div 2d 960; 411 NYS2d 718 (1978), *People v Smith,* 63 Cal 2d 779, 795-797; 48 Cal Rptr 382; 409 P2d 222 (1966). However, extension of the hot pursuit exception to justify unannounced entry into the premises of a fleeing *misdemeanant* is inconsistent with the policies underlying such legislation. The statutory notice requirements manifest an intent to protect the privacy of the individual in his home, protect innocent persons who may also be present on the premises where an arrest is made, prevent situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice, and protect police who might be injured by a startled and fearful householder. *People v Solario,* 139 Cal Rptr 725; 566 P2d 627 (1977). The hot pursuit doctrine excuses strict adherence to statutory notice and demand mandates in order to prevent police from being unduly burdened in their efforts to arrest criminals guilty of serious offenses. Preventing the escape of a fleeing felon may necessarily prevail over the interests the statute was designed to protect. Employing the same balancing test, the less serious nature of a misdemeanor offense militates against extending the hot pursuit exception to justify unannounced entry into a private residence to make such an arrest. Important interests such as privacy expectations and prevention of unnecessary violence must, in this instance, prevail.

Finally, we must consider whether the presence of any other exigent circumstances vindicates the warrantless, unannounced intrusion which occur-

admittance and explained the purpose for which admittance is desired."

red in the instant case. The New York statute, for example, lists specific situations which excuse non-compliance: (1) to prevent defendant's escape, (2) to avoid endangering the life or safety of an officer or other person, (3) to prevent destruction or secretion of material evidence. See also *Rodriguez v Butler,* 536 F2d 982 (CA 2, 1976), *People v Hyter,* 61 App Div 2d 990; 402 NYS2d 602 (1978) (officer had reason to believe suspected felon was armed and dangerous). Here, the officer had no reason to believe defendant was armed or dangerous or that immediate entry was necessary to prevent the destruction of evidence.

One recent New York decision approved of a police officer's unannounced entry into defendant's dwelling to effect a warrantless *felony* arrest in the absence of exigent circumstances. *People v Payton,* 45 NY2d 300; 408 NYS2d 395; 380 NE2d 224 (1978). The question of the constitutionality of this procedure is pending before the United States Supreme Court. 48 USLW 1096.* Even if the Court finds no constitutional violation involved in such an arrest, the seriousness of a felony offense, as opposed to a misdemeanor, must be considered in comparison.

In *People v Hughes,* 240 Cal App 2d 615, 619-620; 49 Cal Rptr 767, 771 (1966), officers forcibly entered a building without giving notice of purpose or demanding admission to arrest the occupants for gambling. In reversing the defendant's conviction the California Court of Appeals commented upon the unannounced entry for a misdemeanor arrest as follows:

"Traditionally, the law has imposed on the police a more restricted field of action where mere misdemean-

---

* The New York court's decision has been overturned by the United States Supreme Court, *Payton v New York,* 48 USLW 4375 (April 15, 1980—REPORTER.

ors were involved than where felonious conduct was sought to be prevented or punished. Thus, except in cases of detention of juveniles (where special problems arise) even an officer may arrest without a warrant for a misdemeanor only where it has been committed in his presence, and the use of lethal force for the prevention of a crime, or to effect an arrest, is also limited to cases of felonies and is not permissible in cases of misdemeanors.

"We think that the same distinction should be observed here. There is no suggestion that the officers had any reason to suspect that anything was going on other than a private, 'friendly' game among defendant and his guests. It is not suggested that the officers believed that a felony was being committed, or that they had any purpose other than to effect an arrest for a violation of section 330 or 330a of the Penal Code—misdemeanors carrying a maximum penalty of a $500 fine or a six month jail sentence, or a combination of such penalties. No 'compelling reason' to prevent the commission of a major crime, or to insure the capture and conviction of a major criminal, presented itself to the officers. Nor are we pointed to any suspicion on their part that any of the gamblers were vicious men or that they might be armed.

"Under these circumstances, there was no overwhelming public interest to be served sufficient to excuse the officers from violating rules laid down by the Legislature as a matter of public policy and designed to insure the citizen against a destruction of his property or an invasion of his personal privacy which notice and demand could have made unnecessary." (Footnote and citations omitted.)

We adopt the sound reasoning demonstrated by the California court and conclude that defendant herein was the subject of an unlawful arrest. The decision below is reversed. This disposition renders discussion of the remaining issues raised by defendant unnecessary.

Reversed.