PEOPLE v KIRCHOFF

1. ARREST—INVESTIGATIVE STOPS—SPECIFIC FACTS—REASONABLE IN-
   FERENCES—PROBABLE CAUSE.

   A police officer may in appropriate circumstances and in an
   appropriate manner approach a person for purposes of investi-
   gating possible criminal behavior even though there is no
   probable cause to make an arrest; an investigative stop must be
   supported by specific and articulable facts, which, taken to-
   gether with the reasonable inferences from those facts, reason-
   ably warrant that intrusion.

2. ARREST—INVESTIGATIVE STOPS—PRIOR INFORMATION—SUSPICIOUS
   ACTIVITY—FLEEING THE SCENE.

   Police officers had reasonable cause for an investigative stop of a
   suspicious person where they were informed prior to the stop
   that he had started running, looking over his shoulder, after
   observing another police officer in the vicinity and where an
   additional cause for the stop arose when the suspect fled when
   called to by the officer making the stop.

3. SEARCHES AND SEIZURES—EVIDENCE—ABANDONMENT—ACT AND IN-
   TENT—FLIGHT—ADMISSIBILITY.

   A defendant who threw down a knapsack while fleeing from
   police officers and then continued in flight has exhibited both
   the act and the intent by which abandonment may be con-
   cluded; a valid finding of abandonment deprives a defendant of
   standing to assert a claim that the items of evidence in ques-
   tion were improperly seized.

4. DRUGS AND NARCOTICS—EVIDENCE—POSSESSION OF MARIJUANA—
   TESTING UNITS—ADMISSIBILITY.

   It is not necessary that each of 39 bags of suspected marijuana be
   tested for content before all of them can be admitted in
   evidence against a defendant charged with their possession; it

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 5 Am Jur 2d, Arrest §§ 15, 45.
[3] 68 Am Jur 2d, Searches and Seizures § 23.
[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 70.
[5, 6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 46, 47.

is only necessary that an expert witness provide the foundational facts for their admission by testifying that some of the bags were tested and found to contain marijuana.

5. DRUGS AND NARCOTICS—EVIDENCE—INFERENCES—INTENT TO DELIVER—QUANTITY.

Intent to deliver a controlled substance may be inferred by the jury where the quantity is large.

6. DRUGS AND NARCOTICS—REASONABLE INFERENCES—SALABLE UNITS—JURY.

A jury might reasonably conclude that each of the packages was intended as a salable unit where there was evidence that a defendant possessed 39 separate bags of marijuana.

Appeal from Alpena, Allan C. Miller, J. Submitted February 7, 1977, at Detroit. (Docket No. 24831.) Decided March 31, 1977.

Thomas J. Kirchoff was convicted of possession of marijuana with intent to deliver. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Roger C. Bauer,* Prosecuting Attorney (Prosecuting Attorney's Appellate Unit, *Mark I. Leach,* Assistant Attorney General), for the people.

*Robert R. Ferguson,* for defendant.

Before: BRONSON, P. J., and ALLEN and D. E. HOLBROOK, Jr., JJ.

PER CURIAM. Defendant appeals of right his February 27, 1975 jury conviction for possession of marijuana with intent to deliver, contrary to MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c). He was sentenced to three years probation, with the first 90 days to be served in the county jail, and fined $100.

About 11:20 p.m. on the night of May 30, 1974, and while on routine patrol in Alpena, city police officers Bell and Anderson observed the defendant walking along Ninth Street carrying a knapsack. Defendant was known to the officers who, as they drove past him, made a radio inquiry as to any outstanding arrest warrants issued against defendant. They were informed there were none. Within a few blocks the officers saw another policeman, Officer Byers, in a vehicle with lights flashing. Byers inquired if they were looking for a long haired young fellow with a knapsack. When the officers stated that they were, Byers responded that after observing the patrol car, defendant started "running like hell * * * looking back over his shoulders". Evaluating this information as "suspicious", Bell and Anderson turned their car around and gave chase, finally pulling into a residence driveway within four or five feet of defendant. When Officer Bell called out "Tom, come here a minute" the defendant turned and ran. The officers exited the patrol car, giving chase on foot. Pursuit continued a distance of some 100 yards during which defendant threw down the knapsack. Within a few steps after throwing away the knapsack, defendant was apprehended by Officer Bell. Upon retrieving the knapsack the officers found a brown paper bag containing suspected marijuana wrapped in 39 separate baggies. Chemical analysis of six baggies, randomly selected out of the 39, disclosed marijuana. Over objection, all 39 baggies, weighing approximately three pounds, were introduced in evidence.

As his primary claim of error, defendant claims the trial court erred in failing to grant defendant's motion to suppress in evidence the contents of the paper bag. We respond by focusing on two ques-

tions: (I) whether the initial stop was lawfully justified, and (II) whether the seizure and search of the knapsack were lawfully justified.

## I. *The Initial Stop.*

It is clear from the record that the officers' initial stop of the defendant was for investigative purposes only. In *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the leading case on investigative stops, the Court held that such stopping must be supported by "specific and articulable facts which, taken together with the reasonable inferences from those facts, reasonably warrant that intrusion". *Terry v Ohio, supra,* 22, *Young v United States,* 140 US App DC 333, 336; 435 F2d 405, 408 (1970). Again, in *Adams v Williams,* 407 US 143, 145; 92 S Ct 1921; 32 L Ed 2d 612, 616 (1972), the Supreme Court reiterated and approvingly summarized the rules governing investigative stops as follows:

"In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest'. [Citation omitted.] The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an immediate response. [Citation omitted.] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

Thus, the constitutional validity of the stop in the

instant case must be evaluated by focusing upon the *reasonableness* of the governmental intrusion complained of in light of the "specific and articulable facts" available to Officers Bell and Anderson at the time. When the officers first observed defendant walking along the sidewalk they had less cause for an investigative stop than the stop held to be unreasonable in *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974). But when informed moments later by Officer Byers that defendant, after observing the officer, started running, looking over his shoulder, reasonable cause for an investigative stop came into being. Additional cause for a stop arose when defendant fled when called to by Officer Bell. See *People v Rivers,* 42 Mich App 561; 202 NW2d 498 (1972). We conclude the initial stop was lawfully justified.

## II. *The Seizure.*

Plaintiff asserts that defendant lacks standing to challenge the legality of the seizure in light of the fact that defendant abandoned the knapsack immediately prior to his apprehension. The law is clear that "a valid finding of abandonment deprives [defendant] of standing to assert a claim that the items of evidence in question were improperly 'seized' ". *Parman v United States,* 130 US App DC 188; 399 F2d 559, 565 (1968). See generally *Abel v United States,* 362 US 217; 80 S Ct 683; 4 L Ed 2d 668 (1959), *reh den,* 362 US 984; 80 S Ct 1056; 4 L Ed 2d 1019 (1960), *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924), *United States v Robinson,* 430 F2d 1141 (CA 6, 1970), *United States v Cox,* 428 F2d 683 (CA 7, 1970), *Friedman v United States,* 347 F2d 697 (CA 8, 1965), and *People v Mason,* 22 Mich App

595; 178 NW2d 181 (1970). In defining the concept of abandonment, the *Friedman* Court stated:

"Abandonment is an ultimate fact or conclusion based generally upon a combination of *act and intent*. How did the person who was supposed to have abandoned the property act, that is, what did he do, and, second, what was his intention? These call for factual determinations." *Friedman, supra,* 704. (Emphasis supplied.)

Thus, any determination by us that the defendant had or had not abandoned the knapsack requires an examination of the evidence to determine whether or not the intent to abandon was present. The pertinent facts can best be summarized by quoting from the trial transcript:

"Q [by assistant prosecuting attorney] I see. What was his response? What did he do?

"A * * * He ran between the houses behind some hedge and as he ran between the houses, he threw the knapsack down and took a couple more steps and I grabbed ahold of him and then I retrieved the knapsack and turned Mr. Kirchoff over to Officer Anderson.

* * *

"Q And when he was apprehended, did he have the knapsack?

"A No. Just before I grabbed ahold of him, he had thrown the knapsack down.

"Q Where did he throw it?

"A * * * We were before the houses—between 331 Long Lake and the house south of it and we ran in between there and as I got closer to him, he took the knapsack and threw it and took a couple more steps and I grabbed ahold of him."

To us, the quoted testimony bespeaks an intention to continue in flight without the burden of the knapsack. Defendant did not throw the knapsack

down and stand beside it or stop. He continued in flight. Justice Oliver Wendell Holmes spoke to a similar factual situation in *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924). There, Federal revenue agents, concealed some 50 to 100 yards away, saw defendant Hester and one Henderson with a bottle and jug suspected of containing moonshine whiskey. When one of the officers gave chase and fired a shot, Hester dropped the jug and Henderson threw away the bottle. The Court found abandonment, saying:

> "The defendant's own acts, and those of his associates, disclosed the jug, the jar, and the bottle; and there was no seizure in the sense of the law when the officers examined the contents of each *after it had been abandoned.* "(Emphasis supplied.) *Hester, supra,* 58.

See also *Haerr v United States,* 240 F2d 533 (CA 5, 1957). We are persuaded that the seizure of the knapsack and the search of the contents thereof was lawful.

Defendant next argues that the trial court erred reversibly when it admitted into evidence 39 bags of marijuana when only six of them had been chemically tested. A similar claim was made and rejected in *People v Koehler,* 54 Mich App 624; 221 NW2d 398 (1974). Not every item of evidence need be qualitatively tested before being admissible, provided certain foundational facts are first introduced. The foundational facts here were supplied by an expert witness for the people.

The final claim of error relates to the trial court's denial of defendant's motion for a directed verdict. That motion was predicated on the ground that except for the large quantity of marijuana found in the knapsack there was no evidence from which the jury could find intent to deliver. Citing

Judge T. M. BURNS' opinion concurring in part and dissenting in part in *People v Farris,* 61 Mich App 417, 422; 232 NW2d 723 (1975), and *Redden v State,* 281 A2d 490 (Del, 1971), defendant contends that it is impermissible to infer that one who possesses a large amount of a controlled substance intended to deliver it. We reject the argument on multiple grounds. *First,* Judge BURNS' opinion was the minority opinion. It disagreed with that portion of *People v Serra,* 55 Mich App 514; 223 NW2d 28 (1974), holding that a jury might permissibly infer that a person possessing a large amount of a controlled substance intended to deliver it.[1] The majority opinion reaffirmed *Serra, supra. Second,* any doubt as to the holding in *Serra* was dispelled by this Court in *People v Peterson,* 63 Mich App 538, 547–548; 234 NW2d 692 (1975).

"Where the quantity is large, the intent to deliver may be a permissible inference. Here, however, the quantity of seeds possessed was so slight that we are constrained to find that reasonable jurors could not infer the intent to deliver from that quantity. There was no other evidence on the question of defendant's intent."

*Third,* the evidence of intent to deliver was not limited to the quantity of the drug found in the knapsack.[2] Additionally, there was proof that the substance was wrapped in 39 separate bags. From

[1] "Denying the prosecutor the use of this evidentiary crutch [the two-ounce presumption rule] should not impede appropriate prosecutions. The substantive crime remains available. Prosecutions *involving large amounts of marijuana* will not require a presumption to convince a jury that the possessor intended something other than personal use; *the inference may follow of its own force."* (Emphasis supplied.) *People v Serra,* 55 Mich App 514, 525; 223 NW2d 28 (1974).

[2] The people's expert witness testified that from the approximate 3.04 pounds of marijuana found in the knapsack, about 2,700 marijuana cigarettes could be produced.

this fact, the jury might reasonably conclude—and the prosecution so urged in final argument—that the 39 packages were saleable units. Finally, *Redden v State, supra,* is distinguishable since the sole evidence was the fact that 12 ounces of marijuana were found in the defendant's home.[3]

Affirmed.

---

[3] "The recent case of *Redden v State,* * * * is not to the contrary. There, the sole evidence in the case was that 12 ounces of marijuana were found in the defendant's home. No additional evidence was introduced to buttress that circumstance; and we found the bare evidence of quantity insufficient in itself under the circumstances of the case, to prove an intent to sell." *Farren v State,* 285 A2d 411, 412 (Del, 1971).