PEOPLE v TEBEDO

OPINION OF THE COURT

1. ARREST—ARREST WITHOUT WARRANT—FELONIES—REASONABLE
     CAUSE—STATUTES.

   A police officer may not, without a warrant, arrest a person for a
   felony unless a felony has been committed and the officer has
   reasonable cause to believe that the person arrested has com-
   mitted it (MCLA 764.15[c]; MSA 28.874[c]).

2. ARREST—INVESTIGATORY STOP—UNUSUAL CONDUCT.

   A police officer may stop a person for purposes of investigating
   possible criminal behavior even though there is no probable
   cause to make an arrest where the officer has observed unusual
   conduct which leads him reasonably to conclude in light of his
   experience that criminal activity may be afoot.

3. ARREST—INVESTIGATORY STOP—JUSTIFICATION FOR STOP.

   An investigative stop of a person by police must be justified at its
   inception and must be reasonably related ·in scope to the
   circumstances which justified the interference in the first place.

4. ARREST—FLIGHT BY SUSPECT—RELATION TO CRIME.

   The fact that a suspect flees at the approach of the police does
   not by itself justify an arrest; the police must positively relate
   the flight to the commission of a crime.

5. ARREST—INVESTIGATORY STOP—REASONABLE SUSPICION—SUBSE-
     QUENT ACTS OF ACCUSED—EVIDENCE.

   Police officers who stop a person for investigation of possible
   criminal activity may not use subsequent actions of the accused
   to supply the reasonable suspicion which is essential to justify
   the initial intrusion; therefore, an inculpatory statement made
   by a defendant after his arrest is not admissible in evidence

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 5 Am Jur 2d, Arrest §§ 24, 25, 32.
[2–6] 5 Am Jur 2d, Arrest § 45.
   What constitutes probable cause for arrest—Supreme Court cases.
   28 L Ed 2d 978.

where the police did not have reasonable cause to arrest the defendant.

Concurrence by Allen, J.

6. Arrest—Investigatory Stop—Suspicious Persons—Evidence.
    *Police officers had a sufficient basis to stop a person to inquire of him what he was doing where the person was discovered at 5 a.m. standing behind a row of apartment buildings shortly after a suspicious person had been reported in the area and where the person fled as the police car approached; without more, however, the police were not justified in arresting the person because there was no indication of criminal activity, and a statement made by the person after his arrest cannot be used to inculpate him in a robbery which occurred three days earlier.*

Appeal from Genesee, Ollie B. Bivins, Jr., J. Submitted December 7, 1977, at Lansing. (Docket No. 31039.) Decided February 23, 1978.

Gary M. Tebedo was convicted of armed robbery. Defendant appeals. Reversed, and new trial granted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Terrance P. Sheehan,* for defendant on appeal.

Before: R. B. Burns, P. J., and Allen and R. M. Maher, JJ.

Per Curiam. Charged with armed robbery, MCLA 750.529; MSA 28.797, defendant was convicted by a jury on March 18, 1976. The trial court sentenced him to a term of 30 to 40 years. He comes before this Court on a delayed appeal.

On June 25, 1975, a Kroger grocery store on

Corunna Road in Flint Township was robbed. On June 28, 1975, two officers from the Flint Township police department received a call from a Genesee County police car that a suspicious person had been spotted in the area of the Kroger store on Corunna Road. No connection was made between the individual spotted and the June 25th robbery.

The officers drove to an area approximately one-quarter mile from the store, stayed 10 to 15 minutes but saw no one. They then proceeded into a private drive in the rear of the nearby Circle Court Apartments where defendant lived. They saw defendant standing behind the last row of buildings, about ten feet from the door of his apartment. As they approached defendant in their marked police car, he ran.

One of the officers got out of the car and gave chase. After pursuing defendant for two blocks, the officer drew his gun and ordered defendant to halt. He laid defendant on his stomach and handcuffed him. It was then, according to the police testimony, that defendant said "he knew we had him for the robberies and that's why he ran". The officer also testified that defendant's only suspicious action was his running; he indicated that while defendant was standing outside his residence he was doing nothing suspicious.

Defendant alleges error in the trial court ruling which admitted into evidence the statement defendant made when first stopped by police. He claims that because his arrest was unlawful, the incriminating statement must be suppressed as the fruit of the poisonous tree.

A police officer may not without a warrant arrest a person unless a felony has been committed and the officer has reasonable cause to believe

that such person has committed it. MCLA
764.15(c); MSA 28.874(c). A police officer may,
however, "in appropriate circumstances and in an
appropriate manner approach a person for pur-
poses of investigating possibly criminal behavior
even though there is no probable cause to make an
arrest". *Terry v Ohio,* 392 US 1, 22; 88 S Ct 1868;
20 L Ed 2d 889 (1968). It is not unlawful for a
police officer to stop persons when he has observed
"unusual conduct which leads him reasonably to
conclude in light of his experience that criminal
activity may be afoot". *People v Whalen,* 390 Mich
672, 680; 213 NW2d 116 (1973).

But in justifying the intrusion the police officer
must be able to point to specific and articulable
facts which, taken together with rational infer-
ences from those facts, reasonably warrant the
intrusion. *Terry v Ohio, supra,* at 21. In the pres-
ent case the parties dispute whether the actions of
the officers constituted an investigative stop or an
arrest.

We note first that, whatever it is determined to
be, the officers could articulate no specific facts
which would warrant an intrusion of the kind
made upon defendant. They stated that when first
spotted, defendant was merely standing about ten
feet from the door of his apartment, an action
which cannot reasonably be called suspicious.

"There must be something at least in the activities of
the person being observed or in his surroundings that
affirmatively suggests particular criminal activity, com-
pleted, current, or intended." *Sibron v New York,* 392
US 40, 73; 88 S Ct 1889; 20 L Ed 2d 917 (1968) (Harlan,
J., concurring).

The officers in this case had no knowledge and no

reason even to suspect that defendant was linked to a robbery which occurred three days earlier. Their testimony reveals the police made no connection between the defendant and the robbery of the grocery store.

Moreover, an investigative stop—if the police action is so characterized—must be justified at its inception and must be reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v Ohio, supra,* at 20. The justification in this case was a radio report that a suspicious person had been seen in the vicinity of the Kroger store. A stop of even limited scope in such a situation is of dubious propriety. The "stop" in this case was not, however, limited in scope nor strictly tied to and justified by circumstances which rendered its initiation permissible. Rather, the police actions constituted an arrest, as the trial court aptly explained to the jury. Laying one who has been detained on his stomach on the ground and then handcuffing him are not the elements of an investigative stop.

The police and the prosecutor attempt to justify the warrantless arrest on the basis of defendant's flight from the police car. Flight alone does not justify an arrest, particularly when, as here, defendant's running is not flight from the scene of a reported crime. The police must positively relate the flight to commission of a crime. *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970).

"Flight may be some evidence of consciousness of wrongdoing, but it does not necessarily point to the commission of a felony. A police officer may not arrest for consciousness of wrongdoing. He must have reasonable cause to believe that a felony has been committed and that the accused person committed it." 26 Mich App at 421 (Footnotes omitted.)

When first observed by the police, defendant was doing nothing suspicious. On that basis the officers had no reason to arrest or even to stop the defendant. Defendant began to run. It must be emphasized that he was not running from the scene of any reported criminal activity. The police try to justify their actions by calling defendant's flight suspicious.

For purposes of an investigatory stop, police officers cannot use subsequent actions by the accused to supply the reasonable suspicion essential for the initial intrusion. The initial intrusion must be justified. Nor can mere suspicion of an individual, the most the officers could have had in this case, be proper justification for a warrantless arrest. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), *People v Reeves,* 23 Mich App 183; 178 NW2d 115 (1970). The officers were not investigating a particular crime; they were not aware of any crime which had just been committed from which defendant could have been fleeing; they did not relate defendant to the robbery at the Kroger store three days earlier.

That a person, doing nothing suspicious, should run at the sight of a police car does not warrant the officers in that car to pursue the individual on foot, to order him to halt at gunpoint, to lay him on the ground on his stomach and to handcuff him, when the only suspicious activity was the individual's flight, precipitated by the officers' initial intrusion. No probable cause to make a warrantless arrest of defendant existed.

We realize that police should not shrug their shoulders and allow crime to occur. Yet good police work is characterized not only by the prevention and detection of crime but also by the avoidance of intrusions upon personal privacy in

violation of the fourth amendment. *People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975).

The police action in this instance when there was no probable cause to arrest was too great an intrusion on defendant's privacy to be sanctioned. The arrest was unlawful. Defendant's statement, made after the arrest, should have been suppressed. The conviction is reversed and defendant is granted a new trial.

Allen, J. *(concurring).* I write separately in concurrence to distinguish this case from *People v Kirchoff,* 74 Mich App 641; 254 NW2d 793 (1977). In the instant case, the only facts known to the officers was that a person standing behind a row of apartment buildings at 5 a.m., an area where a suspicious person had recently been reported to the officers, fled as the officers' patrol car approached. These facts provided a sufficient basis for a limited *Terry v Ohio*[1] type investigatory stop. But they did not justify laying the defendant on the ground and handcuffing him.

At 5 a.m., and in view of the earlier report to the officers concerning a suspicious person in the apartment building area, it would have been appropriate to inquire of the individual what he was doing. Even in light of the fact that the individual fled, there was no indication of criminal activity which, at that point, warranted arrest without prior questioning of the fleeing person's activities. The handcuffing was an arrest which was a serious intrusion upon the freedom of the individual and precluded the use of the statement made by defendant upon arrest.

In *Kirchoff, supra,* the defendant was apprehended by the police about 11:20 p.m., shortly

[1] 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

after he fled from police after observing their patrol car. The police attempted to make an initial investigatory stop but the defendant again fled and some 100 yards later threw away a knapsack in which was found packets of marijuana. It was concluded that the initial stop in *Kirchoff* was warranted. Such a stop would have been warranted in the instant case. Further, the Court found that the knapsack had been "abandoned" by the defendant and thus, under *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924), the search of the knapsack's contents and their admissibility in evidence was lawful. The abandonment rationale is non-existent in the instant case and may not be used to justify the introduction in evidence of defendant's incriminating statement made following the handcuffing. In my opinion, the type of intrusion made in the instant case exceeded a *Terry* investigative stop and therefore I agree with the majority that, in this case, the exclusionary rule should apply.