PEOPLE v MAMON

Docket No. 102233. Submitted October 19, 1988, at Detroit. Decided
   December 5, 1988. Leave to appeal applied for.

Defendant, Mark Mamon, was observed by two Detroit police
   officers who were in uniform, driving a marked scout car and
   on routine patrol as he stood next to a public telephone at an
   early evening hour on a street corner that was known to have
   narcotics activity. When defendant observed the marked scout
   car he ran and he was pursued on foot by the police. While
   running, defendant took an object from his pocket and dropped
   it on the ground. The defendant was then detained, the object
   was retrieved and an examination indicated that it contained a
   controlled substance. Defendant was bound over to the Record-
   er's Court for the City of Detroit on a charge of possession of a
   controlled substance. Defendant's motion to quash the informa-
   tion was granted by the trial court, Wendy M. Baxter, J.,
   following a hearing. The people appealed.

   The Court of Appeals held:

   1. The facts available to the police officers may have led to a
   generalized suspicion that defendant was engaged in wrongdo-
   ing but did not provide the requisite particularized suspicion
   based on objective manifestations that defendant was involved
   in criminal wrongdoing to justify an investigatory stop.

   2. The defendant's presence in a high-crime neighborhood
   does nothing to distinguish him from any number of other
   pedestrians in the area and that fact alone would not establish
   the grounds for an investigatory stop.

   3. Considering the totality of the circumstances with which
   the police were confronted before the defendant began to run,
   nothing in their observation of him to that point provided the
   objectively reasonable and articulable suspicion that would
   justify the limited intrusion upon the defendant's liberty and
   privacy interests permitted under Terry v Ohio, 392 US 1
   (1968).

   4. Defendant's flight alone is not a reliable indicator of guilt

REFERENCES

Am Jur 2d, Searches and Seizures §§ 23, 33, 58, 103.

Law enforcement officer's authority, under Federal Constitution, to
   "stop and frisk" person—supreme court cases. 32 L Ed 2d 942.

without other circumstances to make its import less ambiguous. The police cannot use defendant's subsequent act of running to supply the reasonable suspicion essential for the initial intrusion. Defendant's flight, even in conjunction with the fact that he was standing on a street corner known for narcotics activity, simply cannot be used as the basis for the *Terry* stop.

5. A reasonable person would believe, under the facts of this case, that he was not free to leave once the foot chase began. It is clear that defendant was seized as soon as the officers began their chase. Therefore, defendant discarded the controlled substance after he was seized. Since defendant was unlawfully seized during the police pursuit in violation of his Fourth Amendment rights, the trial court properly quashed the information.

Affirmed.

1. SEARCHES AND SEIZURES — INVESTIGATORY STOPS.

Observation by uniformed police officers, driving a marked scout car and on routine patrol, of a person standing next to a public telephone at an early evening hour on a street corner that was known to have narcotics activity did not supply an objectively reasonable and articulable suspicion that would justify an investigatory stop of the person.

2. SEARCHES AND SEIZURES — INVESTIGATORY STOPS — HIGH-CRIME AREAS.

A defendant's presence in a high-crime neighborhood does nothing to distinguish him from any number of other pedestrians in the area and that fact alone does not establish grounds for an investigatory stop of the defendant.

3. SEARCHES AND SEIZURES — FLIGHT — INVESTIGATORY STOPS.

A person's flight at the sight of police officers is not by itself a reasonable indicator of guilt without other circumstances to make its import less ambiguous; the person's flight, even in conjunction with the fact that he had been standing on a street corner known for narcotics activity, is not a basis for an investigatory stop.

4. SEARCHES AND SEIZURES — INVESTIGATORY STOPS — REASONABLE SUSPICION.

Police officers, for purposes of an investigatory stop, cannot use subsequent actions by the accused to supply the reasonable suspicion essential for the initial intrusion.

5. SEARCHES AND SEIZURES — FOOT CHASES.

The police can be said to have seized an individual only if, in

view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave; a person can be found to be seized as soon as police officers begin a foot chase of the person with the intent to capture the person.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

Before: SULLIVAN, P.J., and MURPHY and M. WARSHAWSKY,* JJ.

MURPHY, J. The prosecution appeals as of right from the lower court's order granting defendant's motion to quash the information charging him with possession of a controlled substance, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv).

The only witness at the preliminary examination was Detroit Police Officer Kelvin Patrick. He testified that on September 19, 1986, at approximately 7:50 P.M., while he and his partner were in uniform, driving a marked scout car and on routine patrol, the following occurred which attracted his attention:

*A.* Driving southbound Log Cabin, I observed the defendant, Mark Mamon, standing on the corner of Log Cabin and Grove, which is known to have narcotics activity.

\* \* \*

As we were driving down the street, we observed Mr. Mamon observe the scout car and tryed [sic] to flee to the above location which is 16744 Log Cabin. We detained Mr. Mamon. But before detaining him, we observed him going through his

* Circuit judge, sitting on the Court of Appeals by assignment.

right pocket, drop a burgundy case. At this time,
we detained Mr. Mamon, went back and retrieved
the case, opened the case that had suspected—six
rocks of suspected cocaine rocks in it.

On cross-examination the officer elaborated as
follows:

*Q.* [*Defense Counsel*] Oh, Log Cabin? Okay. And
you said that you looked over, and the defendant
was standing at the corner?
*A.* Yes, ma'am.
*Q.* And he took off running?
*A.* Yes, ma'am.
*Q.* Did you then pursue him in your car, or what
happened?
*A.* Pursued him on foot.
*Q.* You jumped out of your car and started
chasing after him?
*A.* Yes, ma'am.
*Q.* And at that point, he had taken the red case
out of his pocket?
*A.* Yes, ma'am.
*Q.* Okay.
*A.* Correction, ma'am. It was before we caught
him that he took the case out of his pocket.
*Q.* Okay. It was before?
*A.* It was during the chase.
*Q.* So he took off running; you jumped out of
your car, you started running after him; he took
the red case out of his pocket and threw it to the
ground; is that right?
*A.* Yes, ma'am.

The officer also agreed that defendant was stand-
ing next to a public phone and that at no time did
the officers draw their guns at defendant.

This testimony is the full substance of the evi-
dence introduced against defendant. The officer's
testimony on both direct and cross-examination

took six of the twelve pages of the transcript.
Based on the above testimony, defendant was
bound over to circuit court on the controlled sub-
stance information. However, that court noted
that any possible violations of defendant's Fourth
Amendment rights could be addressed at a later
hearing.

Defendant then filed a motion to quash the
information or, in the alternative, to suppress and
for an evidentiary hearing. At the ensuing motion
hearing, defense counsel waived the production of
any additional testimony and relied solely on the
testimony at the preliminary examination. After
brief arguments by counsel, the circuit judge, with-
out any elaboration, simply stated that she was
"convinced that *Shabazz* [sic] [*People v Shabaz,* 424
Mich 42; 378 NW2d 451 (1985)] is controlling and,
accordingly, your motion is granted."

The people now appeal arguing that the police
properly detained defendant based on the author-
ity of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L
Ed 2d 889 (1968). We disagree.

Initially, we note that an appellate court will
not disturb a trial court's ruling at a suppression
hearing unless that ruling is found to be clearly
erroneous. *People v Burrell,* 417 Mich 439, 448;
339 NW2d 403 (1983).

Our Supreme Court in *Shabaz, supra,* discussed
at some length the *Terry* case, noting that the
constitutional inquiry under *Terry* is whether the
seizure and subsequent search of an individual is
reasonable. *Shabaz, supra,* p 53. The Court in
*Shabaz* explained:

> The Court, in *Terry,* specifically declined to deal
> with the question of an "investigative 'seizure'
> upon less than probable cause for purposes of
> 'detention' and/or interrogation," 392 US 19, n 16,

but, in subsequent cases, the Court has developed standards applicable to investigatory stops by police.

\* \* \*

While factually there can be many justifications for a so-called "*Terry* stop," see footnote 6, the criteria for a constitutionally valid limited intrusion upon a citizen's liberty, short of probable cause for arrest, are that the police must have a *particularized suspicion,* based on an objective observation, that the person stopped has been, is, or is about to be engaged in criminal wrongdoing. *Brown v Texas* [443 US 47, 51; 99 S Ct 2637; 61 L Ed 2d 357 (1979)]. As the Supreme Court stated in *United States v Cortez* [449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981)], *the "articulable reasons" or "founded suspicion" or "particularized suspicion" that criminal activity is afoot must derive from the police officer's assessment of the "whole picture"—the totality of circumstances with which he is confronted. [Shabaz, supra, pp 54, 59.]*

The "whole picture" with which the officers were confronted in this case was comprised of these individualized facts:

1. Defendant was observed next to a public telephone at an early evening hour on a street corner that was known to have narcotics activity.

2. Defendant observed the marked scout car and he tried to flee that location.

While the above facts may lead to a generalized suspicion that defendant was engaged in wrongdoing, we cannot conclude that these facts provided the officers with the requisite "particularized suspicion" based on objective manifestations that defendant was involved in criminal wrongdoing. We reach this conclusion after a careful analysis of *Shabaz, supra,* which was relied upon by the circuit court in dismissing the information against

defendant, and recent United States Supreme Court precedent. See *Michigan v Chesternut,* 486 US —; 108 S Ct 1975; 100 L Ed 2d 565 (1988).

The first facts to be analyzed are that defendant was observed next to a public telephone on a street corner known to have narcotics activity. As was stated in *Shabaz,* the defendant's presence in a high-crime neighborhood does nothing to distinguish him from any number of other pedestrians in the area and that fact alone would not establish the grounds for an investigatory stop. *Shabaz, supra,* p 60. Indeed, the defendant in *Shabaz* was observed on the street at night in a high-crime neighborhood. He was also seen leaving an apartment building wherein the observing officers had previously made a number of arrests (fifteen, in fact, see *id.,* p 75), for concealed-weapons violations and narcotics offenses. Moreover, the defendant was observed stuffing a small paper bag under his vest or in his pants.

In contrast, in this case, the officers' observations of defendant reveal much less suspicious circumstances. Defendant was standing next to a public telephone on a corner known for narcotics activity. There was no evidence that the observing officers were responding to a particular complaint of criminal wrongdoing on that corner, or even in that area, or that the officers had made any arrests in the past for illegal activity on that street corner. Moreover, defendant made no furtive gestures as did the defendant in *Shabaz.* Therefore, it appears to us that the defendant in *Shabaz* was in a more suspect location and exhibited more suspicious behavior when compared to defendant's location and behavior in this case. Despite the suspicious nature of these facts in *Shabaz,* before going on to analyze the other facts with which the officers were confronted, the Court concluded:

Considering the totality of the circumstances with which the police were confronted *before the defendant began to run,* it is clear that the officers were entirely without authority to confront the defendant and require him to submit to an investigatory stop and interrogation because, on the basis of what they had observed, the officers had no articulable or particularized grounds to suspect, reasonably, that the defendant was, had been, or was about to be engaged in criminal activity. *Nothing in their observation of him to that point provided the objectively reasonable and articulable suspicion that would justify the limited intrusion upon the defendant's liberty and privacy interests permitted under* Terry.

What then was added to the picture when the defendant began to run that converted the naked and generalized suspicion of the police officers into articulable grounds to conclude that criminal activity was afoot? [*Shabaz, supra,* p 62.]

We believe that the above reasoning and conclusion reached by the Supreme Court applies with even more force in this case.

We next analyze the fact of defendant's flight at the sight of the marked scout car. Here, we recognize that there is perhaps a key factual distinction between *Shabaz* and the instant case. In *Shabaz,* the defendant fled at the sight of an unmarked scout car with several plainclothes police. In this case, the two officers were in uniform driving a marked scout car. However, irrespective of this distinction, the Court in *Shabaz* analyzed the fact of flight by emphasizing that flight alone is not a reliable indicator of guilt without other circumstances to make its import less ambiguous. *Shabaz, supra,* p 62. To establish this proposition our Supreme Court relied in part upon this Court's analysis of the flight issue in *People v Tebedo,* 81 Mich App 535; 265 NW2d 406 (1978). In *Tebedo* this

Court elaborated on the issue of flight from the police by explaining:

> Flight alone does not justify an arrest, particularly when, as here, defendant's running is not flight from the scene of a reported crime. The police must positively relate the flight to commission of a crime. *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970).
>
> "Flight may be some evidence of consciousness of wrongdoing, but it does not necessarily point to the commission of a felony. A police officer may not arrest for consciousness of wrongdoing. He must have reasonable cause to believe that a felony has been committed and that the accused person committed it." 26 Mich App at 421 (Footnotes omitted.)
>
> *When first observed by the police, defendant was doing nothing suspicious. On that basis the officers had no reason to arrest or even to stop the defendant. Defendant began to run. It must be emphasized that he was not running from the scene of any reported criminal activity. The police try to justify their actions by calling defendant's flight suspicious.*
>
> *For purposes of an investigatory stop, police officers cannot use subsequent actions by the accused to supply the reasonable suspicion essential for the initial intrusion. The initial intrusion must be justified.* Nor can mere suspicion of an individual, the most the officers could have had in this case, be proper justification for a warrantless arrest. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963); *People v Reeves,* 23 Mich App 183; 178 NW2d 115 (1970). [*Tebedo, supra,* pp 539-540.]

In this case, while the record is not entirely clear, it appears that defendant was chased on foot and he kept running until caught by the police and physically detained. Applying the reasoning of *Tebedo,* it is clear that the police in this case

cannot use defendant's subsequent act of running to supply the reasonable suspicion essential for the initial intrusion. Therefore, defendant's flight, even in conjunction with the fact defendant was standing on a street corner known for narcotics activity, simply cannot be used as the basis for the *Terry* stop.

We next turn to the people's argument that the recent pronouncement from the United States Supreme Court in *Chesternut, supra,* which reversed this Court's decision in *People v Chesternut,* 157 Mich App 181; 403 NW2d 74 (1986), is authority for their position that the circuit court erred in dismissing the charge against defendant. Our reading of both these cases, however, does not lead us to this conclusion.

First, a review of the facts in *Chesternut* is in order. In that case, the defendant was standing on a street corner talking with another man when a marked police car appeared at the corner on routine patrol. When the defendant saw the police car, he started running and the police drove alongside the defendant *in their patrol car.* The officers testified that they wanted to see where the defendant was going. While the defendant was being followed, the police saw the defendant throw something on the ground and then stop. The police recovered the packets thrown by the defendant and he was arrested after those packets revealed suspected narcotics. This Court, on the basis of *Shabaz, supra,* and *People v Terrell,* 77 Mich App 676; 259 NW2d 187 (1977), affirmed the lower court's suppression of the evidence and the dismissal of the charges. A key reason this Court reached the conclusion that it did was because this Court concluded that the defendant had been subjected to an "unjustified seizure" which was effectuated as soon as the officers began their pursuit

in the patrol car. *Chesternut, supra,* 157 Mich App 183. Based on this key assumption, this Court went on to conclude:

> After reviewing the record in this case we are unable to conclude that the totality of facts known to the officers when they pursued the defendant provided them with a reasonable belief that criminal activity was afoot. The police testified they [sic] they pursued the defendant simply because he ran when he spotted their car. Certainly, the fact that defendant ran may have aroused the officers' general suspicion, but without some specific additional knowledge, the fact that defendant ran was insufficient to justify their pursuit and eventual stop of the defendant. *Terrell, supra* at 680. There was no testimony in this case that the defendant was observed in a high crime area where street drug dealing was common, which, along with the defendant's flight, may have provided the police with the articulable facts which would have warranted an investigatory pursuit. See, e.g., *People v Carter,* 96 Mich App 694, 698-699; 293 NW2d 681 (1980), lv den 410 Mich 872 (1980).[1] Rather, in this case,

[1] At the motion hearing below, the prosecution pointed to this dicta as support for its conclusion that the facts of this case would warrant the *Terry* stop. However, our reading of *Carter* does not lead us to believe that the facts of that case support this proposition. In *Carter* there were three police officers on routine patrol at about 8:40 P.M. in a semi-marked police car. As the car approached 1620 Gladstone, an officer saw defendant walking away from the apartment building at that address. When the defendant reached the sidewalk, he looked in the direction of the police car, turned around and ran toward the apartment building. An officer followed. When the defendant reached the building, he opened a door and entered a foyer area. As the door was closing behind the defendant, an officer saw him throw down a plastic bag. The officer picked up the bag and saw that it contained a brown substance which he suspected was heroin. The defendant was then placed under arrest. According to the officer's testimony, there had been numerous rapes in the area and he had received reports of breakings and enterings in the building at 1620 Gladstone.

We also note two key distinctions between *Carter* and the facts of this case. First, it does not appear that the officer in *Carter* seized the defendant before the suspected drugs were discarded. It appears that the officer followed the defendant to further investigate, as opposed to engaging in an immediate foot chase of the suspect which was an

the police saw the defendant do absolutely nothing illegal nor did they observe other suspicious activity. *Since the defendant's divestment of the packets was in direct response to the officers' unjustified seizure,* the trial court did not err in suppressing the evidence. *Shabaz, supra* at 66. [157 Mich App 184.]

In reversing this Court, the United States Supreme Court's holding was a narrow one. It held that the police officers' initial pursuit of the defendant "—a brief acceleration to catch up with respondent, followed by a short drive alongside him —" did not constitute a seizure implicating Fourth Amendment protections. Specifically, the Court concluded that the defendant was not seized by the police before he discarded the packets containing the controlled substance. Unfortunately, the Court never addressed whether the act of fleeing, by itself, was sufficient to constitute reasonable suspicion justifying a *Terry* stop of the defendant.

As we have already noted above, the constitutional inquiry under *Terry* is whether the seizure and subsequent search of an individual is reasonable. *Shabaz, supra,* p 53. However, there was no seizure of the defendant in *Chesternut* and, therefore, the police were not required to have a particularized and objective basis for suspecting the defendant of criminal activity. In determining whether a seizure had occurred in *Chesternut,* the Supreme Court applied the test which had its genesis in *Terry, supra.* That test provides that the police can be said to have seized an individual only if, in view of all the circumstances surrounding

attempt to capture the defendant. Second, the officer knew of numerous rapes in the area and he had received specific reports of breakings and enterings in the same building from which the defendant was seen exiting and to which he returned. Therefore, it appears that on these facts, the officers in *Carter* seemed to have a *particularized suspicion* that criminal activity was afoot.

the incident, a reasonable person would have believed that he was not free to leave. The Court reasoned:

> While the very presence of a *police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure.* . . .
> Without more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not "so intimidating" that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business. *INS v Delgado,* 466 US [210, 216; 104 S Ct 1758; 80 L Ed 2d 247 (1984)]. *The police therefore were not required to have "a particularized and objective basis for suspecting [respondent] of criminal activity," in order to pursue him. United States v Cortez,* 449 US 411, 417-418 [101 S Ct 690; 66 L Ed 2d 621] (1981). [Citations omitted. *Chesternut, supra,* 100 L Ed 2d 565, 573.]

Importantly, the Court also stated that "the police conduct involved here would not have communicated to the reasonable person *an attempt to capture* or otherwise intrude upon respondent's freedom of movement." *Id.*

Moreover, in a footnote, the Supreme Court seemed to indicate that a foot chase of a suspect might well be a different situation:

> The facts of this case are not identical to the facts involved in both *Terrell* and *Shabaz,* upon which the Michigan courts relied in finding a seizure in this case. In both *Terrell* and *Shabaz,* a police officer *got out of the car to chase the pedestrian suspect on foot, after which the defendant abandoned the inculpatory evidence. People v Terrell,* 77 Mich App [676, 678; 259 NW2d 187, 188 (1977)]; *People v Shabaz,* 424 Mich [42, 47-48; 378

NW2d 451, 453 (1985)]. In *Shabaz,* the State appears to have stipulated that the chase, whose clear object was to apprehend the defendant, constituted a seizure. *Id.* at 52; 378 NW2d at 455. While no similar stipulation was entered in *Terrell,* the goal of that chase appears to have been equally clear. We, of course, intimate no view as to the federal constitutional correctness of either of those Michigan state-court cases. [*Id.* at 573, n 8.]

Since the facts of the instant case involved a foot chase with what reasonably could be described as an attempt to capture, we conclude that a reasonable person would believe that he was not free to leave once the foot chase began. Under these facts, we believe that it is clear that defendant in this case was seized as soon as the officers began their chase. It was after this chase began that defendant discarded the case containing the controlled substance. Therefore, the facts of the pursuit in this case differ dramatically from those in *Chesternut.* And, there being a seizure in this case, the police were required to establish the particularized suspicion, based upon the totality of the circumstances, that criminal activity was afoot. *Chesternut, supra,* 100 L Ed 2d 573.

Since we have concluded that defendant was seized as soon as the officers began their foot chase, and he discarded the case containing the controlled substance after he was seized, we believe that the United States Supreme Court's pronouncement in *Chesternut* does not support a finding that the circuit court erred in dismissing the charges against defendant. We therefore decline the people's request to reverse on that authority.

We do not suggest, however, that the officers in this case could only stand idly by and watch defendant run. Rather, defendant's activity was

suspicious enough to justify some further investigation. But for the officers to immediately pursue defendant in a foot chase, attempting to capture him, based on the information available to them, was an improper intrusion of defendant's Fourth Amendment rights. Simply, we cannot conclude that the totality of facts available to the police provided them with the requisite *particularized suspicion,* based on objective manifestations, that defendant was involved in criminal wrongdoing. Since defendant was unlawfully seized during the police pursuit in violation of his Fourth Amendment rights, the lower court properly quashed the information.

Affirmed.