Docket No. 83061–Agenda 7–March 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SAM WARDLOW, Appellant.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Sam Wardlow, was convicted of unlawful use of a weapon by a felon (720 ILCS 5/24–1.1(a) (West 1994)) following a stipulated bench trial in Cook County and was sentenced to a term of two years' imprisonment. On appeal, the appellate court reversed defendant's conviction, finding that defendant's motion to suppress evidence should have been granted because the revolver seized from him was discovered as a result of an improper investigatory stop. 287 Ill. App. 3d 367. We allowed the State's petition for leave to appeal. 166 Ill. 2d R. 315(a); 145 Ill. 2d R. 604(a)(2).

At the hearing on defendant's motion to suppress, Officer Timothy Nolan testified that on September 9, 1995, he and his partner, Officer Harvey, were assigned to the special operations section of the Chicago police department. On that date, Nolan and Harvey were among eight officers in four cars travelling eastbound on West Van Buren Street with the purpose of investigating narcotics sales in that area. Nolan stated that he was working in uniform, but did not recall whether the police car he drove, the last in the “caravan,” was marked or unmarked.

Nolan testified that as he was driving, he observed defendant standing in front of 4035 West Van Buren. Defendant, who did not appear to be violating any laws, looked in the officers' direction and then fled. Nolan turned his vehicle southbound toward Congress Avenue, continuing to observe defendant, who ran southbound through a gangway and then through an alley. Nolan stated that defendant, who was carrying a white opaque bag under his arm, was cornered in the vicinity of 4036 West Congress when he “ran right towards us.”

Nolan exited his car and stopped defendant. Without announcing his office or asking any questions, he conducted a protective pat-down search of defendant. Nolan testified that he could not see inside the bag defendant was carrying so he “squeezed” the bag and felt a very heavy, hard object “that had a similar shape to a revolver or a gun.” Believing the object to be a weapon, Nolan opened the bag and found a .38-caliber handgun containing five live rounds of ammunition. Nolan then placed defendant under arrest.
(footnote: 1)
Responding to the State's question as to why he “went to that location on that date and time,” Nolan answered that it was “one of the areas in the 11th District that's high narcotics traffic.” Nolan further testified that, based upon his experience in investigating areas in which narcotics were sold, it was common for there to be weapons “in the near vicinity” and he considered that fact as he approached “that specific scene.” After hearing arguments by the parties, the trial court denied defendant's motion to suppress.

Generally, a trial court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. 
People v. Dilworth
, 169 Ill. 2d 195, 201 (1996). This clearly erroneous or manifestly erroneous test is based on the understanding that suppression motions usually raise mixed questions of law and fact. See 
People v. Frazier
, 248 Ill. App. 3d 6, 12 (1993). However, where, as here, neither the facts nor the credibility of the witnesses is contested, the determination of whether there is reasonable suspicion warranting an investigatory stop is a legal question which a reviewing court may consider 
de novo
. See 
In re D.G.
, 144 Ill. 2d 404, 408-09 (1991); 
People v. Foskey
, 136 Ill. 2d 66, 76 (1990); see also 
People v. Besser
, 273 Ill. App. 3d 164, 167 (1995).

The fourth amendment to the United States Constitution guarantees the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV. This provision applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. 
United States v. Brignoni-

Ponce
, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614, 95 S. Ct. 2574, 2578 (1975); 
People v. Smithers
, 83 Ill. 2d 430, 433-34 (1980). In 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the United States Supreme Court held that the public's interest in effective law enforcement makes it reasonable to detain and question individuals under certain circumstances in which probable cause to arrest is lacking. However, in order to protect “the individual's right to personal security free from arbitrary interference by law officers” (
Brignoni-Ponce
, 422 U.S. at 878, 45 L. Ed. 2d at 615, 95 S. Ct. at 2579), the 
Terry
 Court held that such limited investigatory stops are permissible only upon a reasonable suspicion based upon specific and articulable facts that the person has committed, or is about to commit, a crime. 
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; 
Smithers
, 83 Ill. 2d at 434.

This 
Terry
 standard has been codified in our Code of Criminal Procedure of 1963. 
People v. Flowers
, 179 Ill. 2d 257, 262 (1997); 
People v. Long
, 99 Ill. 2d 219, 228 (1983). Section 107–14 of the Code provides, in pertinent part: “A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***.” 725 ILCS 5/107–14 (West 1994). The same standard is applied in determining the propriety of an investigatory stop under article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §6). See 
People v. Tisler
, 103 Ill. 2d 226, 242-43 (1984) (the protection against unreasonable searches and seizures under the Illinois Constitution is measured by the same standards as are used in defining the protections contained in the fourth amendment to the United States Constitution).

Turning to the case before us, defendant contended on direct appeal that the trial court erred in denying his motion to suppress because his presence in a high-crime area and flight from police were insufficient to justify his investigatory stop. The appellate court agreed, but found the record “simply too vague to support the inference that defendant was in a location with a high incidence of narcotics trafficking” and limited its holding accordingly. 287 Ill. App. 3d at 370-71. However, we believe Officer Nolan's uncontradicted and undisputed testimony, which was accepted by the trial court, was sufficient to establish that the incident occurred in a high-crime area. See 
Ornelas v. United States
, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996) (as a general matter determinations of reasonable suspicion and probable cause should be reviewed 
de novo
 on appeal, but reviewing court should take care both to review findings of fact only for clear error and to give due weight to inferences drawn from those facts by judges and local law enforcement officers). Thus, the issue presented by this appeal is whether an individual's flight upon the approach of a police vehicle patrolling a high-crime area is sufficient to justify an investigative stop of the person. Defendant contends that such flight alone is insufficient to create a reasonable suspicion of involvement in criminal conduct. We agree.

A majority of jurisdictions addressing this issue have held that flight alone is insufficient to justify a 
Terry
 stop. See, 
e.g.
, 
State v. Tucker
, 136 N.J. 158, 642 A.2d 401 (1994); 
State v. Hicks
, 241 Neb. 357, 488 N.W.2d 359 (1992); 
People v. Shabaz
, 424 Mich. 42, 378 N.W.2d 451 (1985); 
People v. Aldridge
, 35 Cal. 3d 473, 674 P.2d 240, 198 Cal. Rptr. 538 (1984); 
People v. Thomas
, 660 P.2d 1272 (Colo. 1983); 
Watkins v. State
, 288 Md. 597, 420 A.2d 270 (1980). “Instead, courts require proof of some independently suspicious circumstance to corroborate the inference of a guilty conscience associated with flight at the sight of the police. [Citations.]” 
Hicks
, 241 Neb. at 362-63, 488 N.W.2d at 363; see also 
Tucker
, 136 N.J. at 169, 642 A.2d at 407 (for departure to take on the legal significance of flight, there must be some circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt).

In 
Hicks
, the Nebraska Supreme Court examined a number of these “location plus evasion” cases and, in a well-reasoned opinion, concluded:

“[A]llowing flight alone to justify an investigative stop would undercut the very values 
Terry
 sought to safeguard. 
Terry
 is based in part upon the proposition that the right to freedom from arbitrary governmental intrusion is as valuable on the street as it is in the home. Thus, while a police officer does not violate the Fourth Amendment by approaching an individual in a public place and asking if the person will answer some questions, neither is the person under any obligation to answer. 
Florida v. Royer
, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). The person may decline to listen to the questions at all and simply go on his or her way. Id. If the option to 'move on' is chosen, the person 'may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.' 460 U.S. at 498.

*** Flight upon approach of a police officer may simply reflect the exercise–'at top speed'–of the person's constitutional right to ' “move on.” ' 
Shabaz
, 424 Mich. at 63, 378 N.W.2d at 460. 
Terry
 and 
Royer
 stand for the proposition that exercise of this constitutional right may not itself provide the basis for more intrusive police activity.

* * *

A prime concern underlying the 
Terry 
decision is protecting the right of law-abiding citizens to eschew interactions with the police. Authorizing the police to chase down and question all those who take flight upon their approach would undercut this important right and upset the balance struck in 
Terry
 between the individual's right to personal security and the public's interest in prevention of crime. We therefore join those jurisdictions holding that flight from a police officer is sufficient to justify an investigatory stop only when coupled with specific knowledge connecting the person to involvement in criminal conduct. [Citations.]” 
Hicks
, 241 Neb. at 363-

64, 488 N.W.2d at 363-64.

Although no Illinois court has specifically considered whether sudden flight from police in a high-crime area justifies a stop, we agree with the appellate court that “[i]n Illinois, neither a person's mere presence in an area where drugs are sold (
People v. Harper
, 237 Ill. App. 3d 202, 205, 603 N.E.2d 115 (1992)) nor sudden flight (
People v. Rivera
, 233 Ill. App. 3d 69, 77, 598 N.E.2d 423 (1992)) alone will justify a 
Terry
 stop.” 287 Ill. App. 3d at 370; see also 
People v. Fox
, 97 Ill. App. 3d 58 (1981) (driving away at approach of marked police vehicle not a justification for stop). Moreover, this court has recently emphasized the importance of protecting the freedom to engage in such harmless activities as “loafing, loitering, and nightwalking” and other personal liberties of citizens, including the right to travel, to locomotion, to freedom of movement, and to associate with others. 
City of Chicago v. Morales
, 177 Ill. 2d 440, 459-60 (1997), 
cert. granted
, ___ U.S. ___, 140 L. Ed. 2d 664, 118 S. Ct. 15.

 In 
Morales
, we found that a City of Chicago ordinance which prohibited certain individuals from loitering in public places violated substantive due process because it unreasonably infringed on “the personal liberty of being able to freely walk the streets and associate with friends.” 
Morales
, 177 Ill. 2d at 460-61. We find similarly unreasonable the State's proposal, in the instant case, that every person observed in “sudden and unprovoked flight” from an officer may be stopped regardless of whether the surrounding circumstances indicate the person is involved in criminal activity. 
Cf.
 
People v. Holdman
, 73 Ill. 2d 213 (1978) (defendants' flight following officers' shining bright light into vehicle they reasonably believed to be associated with fugitive for whom they had warrant was indication of criminal activity requiring police pursuit). As defendant suggests, “[i]f the police cannot constitutionally force otherwise law-abiding citizens to move, the police cannot force those same citizens to stand still at the appearance of an officer.” Therefore, because we agree with the majority of courts that view the unequivocal flight of a suspect upon seeing police as not alone indicative of criminal activity, we now examine the record herein to determine if there are corroborating circumstances sufficient to create the reasonable suspicion necessary for the stop of defendant.

The case before us is factually similar to 
People v. Mamon
, 173 Mich. App. 429, 435 N.W.2d 12 (1988),
 rev'd on other grounds
, 435 Mich. 1, 457 N.W.2d 623 (1990). There, two police officers were driving on routine patrol in a marked squad car through an area known for narcotics activity. As the officers approached the defendant, Mamon, standing on a corner near a public phone, he took off running. The officers pursued the defendant on foot, noticing that he removed a case from his pocket and dropped it during the chase. The officers ultimately caught the defendant and retrieved the case, which contained cocaine. The trial court quashed an information charging the defendant with possession of a controlled substance, and the State appealed.

The Michigan appeals court affirmed the trial court's decision, first addressing the circumstances existing before the defendant began to run. Though the incident occurred in a high-crime neighborhood, the court determined that a person's presence in such an area cannot, by itself, provide the basis for an investigatory stop. In so doing, the court noted that the officers were not responding to a particular complaint of wrongdoing in the area and that the defendant made no furtive gestures prior to seeing the officers. Concluding that the officers lacked an articulable basis for stopping the defendant as he stood on the corner, the court turned to the significance of his flight upon their approach. Noting the ambiguous nature of flight as an indicator of guilt, the court held that the act of running at the sight of police patrolling a high-crime area did not provide the particularized grounds necessary to support a reasonable suspicion that criminal activity was afoot. 
Mamon
, 173 Mich. App. at 435-38, 435 N.W.2d at 14-16.

Here, similar to 
Mamon
, Officers Nolan and Harvey were “caravaning” with several other police vehicles when the incident occurred. They were not responding to any call or report of suspicious activity in the area. Though Officer Nolan testified that that area of the 11th District is known for “high narcotics traffic,” we agree with our appellate court's opinion in 
Harper
, 237 Ill. App. 3d at 205-06, and the numerous decisions from other jurisdictions, holding that a person's presence in such an area by itself does not warrant a suspicion that that person is involved in crime. See 
Brown v. Texas
, 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979); 
Hicks
, 241 Neb. at 366, 488 N.W.2d at 365; 
Shabaz
, 424 Mich. at 60, 378 N.W.2d at 459; see also 
In re D.J.
, 532 A.2d 138, 143 (D.C. App. 1987) (innocent activities do not become sinister by the mere fact that they take place in a high-

crime area).

It is also clear that defendant herein gave no outward indication of involvement in illicit activity prior to the approach of Officer Nolan's vehicle. Defendant was simply standing in front of a building when the officers drove by. As in 
Mamon
, the officers lacked an articulable basis for suspecting defendant of involvement in criminal activity prior to the point at which he turned and ran.

 In 
Fox
, the Illinois case which most closely approximates the issue presented herein, the appellate court foreshadowed our concerns, stating:

“At the time of the stop, the investigating officers were aware that `partying and littering' had recently occurred in the *** area and also that the vehicle in which the defendant was riding as a passenger exited the area at a speed which one officer believed to be unreasonable upon the approach of a squad car. But, the officers testifying on behalf of the State did not relate that 
any additional suspicious or unusual activities 
that would have alerted the police to the possibility of criminality were carried on by the occupants of the automobile. ***

***

In short, the evidence adduced in this case does not support the State's contention that the police were aware of specific and articulable facts to justify the stop here. Rather, the evidence suggests that the police officers were operating under a suspicion or hunch that the vehicle contained someone who had committed or was about to commit a crime.” (Emphasis added.) 
Fox
, 97 Ill. App. 3d at 63-64.

Here, as in 
Fox
, in the absence of circumstances corroborating the conclusion that defendant was involved in criminal activity, Officer Nolan's testimony reveals nothing more than a hunch.

As our brethren on the Supreme Court of Colorado have so aptly stated:

“We are aware that the weighty social objective of crime prevention might well be served by permitting stops and detentions without any requirement of a reasonable suspicion that criminal activity has occurred or is about to take place. In the absence of specific and articulable facts supporting the reasonable suspicion, however, 'the balance between the public interest and [defendant's] right to personal security and privacy tilts in favor of freedom from police interference.' 
Brown v. Texas
, [443 U.S.] at 52, 99 S. Ct. at 2641, 61 L. Ed. 2d at 363.” 
Thomas
, 660 P.2d at 1277.

Where, as here, the police stop is not based upon objective criteria pointing to a reasonable suspicion of criminal activity, “the risk of arbitrary and abusive police practices exceeds tolerable limits.” 
Brown v. Texas
, 443 U.S. at 52, 61 L. Ed. 2d at 363, 99 S. Ct. at 2641.

Therefore, because Officer Nolan was not able to point to specific facts corroborating the inference of guilt gleaned from defendant's flight, his stop and subsequent arrest of defendant were constitutionally infirm. U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. The appellate court, therefore, properly reversed the trial court's denial of defendant's motion to suppress evidence. The weapon that was the basis for defendant's conviction should have been suppressed as the product of the unconstitutional seizure of his person. 
Wong Sun v. United States
, 371 U.S. 471, 488, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417 (1963).

For the foregoing reasons, the judgment of the appellate court, reversing the judgment of the circuit court, is affirmed.

Appellate court judgment affirmed
.

FOOTNOTES
1:     
While no testimony was presented as to the precise time of defendant's arrest, the record contains Nolan's arrest report, which indicates a time of 12:15 p.m.